# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: ) | |
| ) | |
| JULIO E. ROMERO ) | Chapter 11 |
| ) | |
| DEBTOR. ) | Case No. 08-41930-JBR |
| ) | |

## MEMORANDUM OF DECISION ON OBJECTIONS TO CLAIMS OF BAYVIEW LOAN SERVICING, LLC
## [# 42 AND #43]

This matter came before the Court for hearing on the Objection to Claim 4.2 of Bayview Loan Servicing, LLC [#42], the Objection to Claim 7 of Bayview Loan Servicing, LLC [#43], the Responses of Bayview Loan Servicing, LLC to the Objections [# 60 and #61], Memorandum of Law in Support of Objections to Claims [#62], and the post-hearing supplemental memoranda [# 69 and #70]. At issue in the current dispute is whether Bayview Loan Servicing, LLC ("Bayview") is entitled to recover prepayment fees provided for in the relevant loan documents. For the reasons set forth herein, the Objections will be sustained.

## FACTS

The facts are not contested. On June 17, 2008 the Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code. Bayview is the current holder of two notes, each secured by mortgages on the Debtor's real estate. One note, dated November 8, 2005, is an adjustable rate note (the "Greenwood Street Note") that is secured by a mortgage (the "Greenwood Street Mortgage") on real estate located at 30-32 Greenwood Street, Worcester, Massachusetts. The other note (the "Main Street Note"), dated July 11, 2007, is also

an adjustable rate note that is secured by a mortgage (the "Main Street Mortgage") on real estate located at 703-711 Main Street, Worcester, Massachusetts. Both Notes impose a prepayment fee.[1] The Greenwood Note separates the prepayment period into two distinct periods: a four year "Lockout Period" and a seven year "Prepayment Period." The Lockout Period, which is the first forty-eight months after the date of the Greenwood Note, prohibits full or partial prepayment of the principal balance of the Note. The Note further provides that

> If, for any reason, a Prepayment is made during the Lockout Period (a "Lockout Prepayment") Borrower shall, simultaneously therewith, be obligated to pay: (i) the aggregate amount of interest which would have accrued on the unpaid principal balance of the Note from the date of such Lockout Prepayment through the expiration date of the Lockout Period (the "Lockout Fee"), plus (ii) all amounts specified in section 7(b) below) [sic].

Section 7(b), in turn, states:

> At any time during the Prepayment Period (as defined below), the principal balance of this Note may be prepaid in whole, but not in part.... If Borrower makes any Prepayment within the first Seven years after the date of the Note (the "Prepayment Period"), the Borrower shall be obligated to pay lender the following amounts:
>
> > (i) an amount equal to five percent (5.00%) of the then outstanding unpaid principal balance of this Note (the "Prepayment Consideration"); and
> >
> > (ii) all accrued interest on the outstanding principal balance to and including the date on which the Prepayment is made; and
> >
> > (iii) all other sums due under this Note....

The Main Street Note does not have a lockout period. Its prepayment period is five years

---

[1] Although the Debtor alleges that the definition of "Prepayment" is the same in each Note, it is not. The Greenwood Note does not define "Prepayment" although it capitalizes the word as if it were a defined term.

2

from the date of the Main Street Note. With the exception of a shorter prepayment period, the language in section 7(b) of each Note is identical. The Main Street Note contains a definition for "Prepayment" as follows:

> "Prepayment" shall include, without limitation, any prepayment of principal that occurs as a result of any Event of Default in any of the Loan Documents or an acceleration of the Maturity Date under any circumstances, any prepayment of principal occurring in connection with foreclosure proceedings or exercise of any applicable power of sale ... and any other voluntary or involuntary prepayment of principal made by the Borrower.

Each Note contains the following language:

> 4. <u>DEFAULT AND ACCELERATION</u>. If any payment in this Note is not paid (a) prior to the fifth (5th) day after a Payment Date, (b) on the Maturity Date or (c) on the happening of any other default, after the expiration of the applicable notice and grace periods, herein or under the terms of the [Mortgage] (collectively, an "Event of default") and Lender declares an Event of Default, then, at the option of Lender (i) the whole of the principal sum of this Note; (ii) interest, default interest, late charges and other sums...(vi) the Prepayment Consideration (defined below), if any; ... shall without notice become immediately due and payable.

In a proof of claim filed originally on August 20, 2008 and then amended on September 25, 2008 ("Claim 4.2"),[2] Bayview seeks $62,912.44 as a "Default Prepayment Consideration" under the Greenwood Street Note and Mortgage.[3] The Greenwood Street Mortgage but not the Greenwood Street Note is attached to Claim 4.2. In its proof of claim filed October 11, 2008 ("Claim 7"), Bayview seeks $22,353.09 as a "Default Prepayment Consideration" provided for in

---

[2] Both proofs of claim are dated August 20, 2008 and appear identical. Moreover Claim 4.2, which was filed on September 25, 2008, does not indicate that it amends the original proof of claim.

[3] In its supplemental memorandum Bayview clarified that the amount consists of a Lockout Fee of $48,845.06 and Prepayment Consideration of $14,067.38.

3

the Main Street documents. The Main Street Note and the Main Street Mortgage are attached to Claim 7.

On October 2, 2008 the Debtor filed a Disclosure Statement and Plan of Reorganization [#36]. The Plan provided that the Class 5 secured claim, which arose under Greenwood Street Note and Greenwood Street Mortgage, would not include the "default prepayment consideration." It expressly stated that

> The Claim shall be allowed as a Secured Claim in the amount asserted in Bayview's Proof of Claim only to the extent of principal balance, interest and late charges, subject to interest accrued and credits for payments made after such Claim was filled [sic]. *The Secured Claim payable under Class 5 shall not include the "Default Prepayment Consideration" in the amount of $62,912.44 included in the proof of claim.* The "Default Prepayment Consideration" shall be deemed disallowed in its entirety. (Emphasis in the original).

The Plan did not contain similar language for Bayview's secured claim arising under the Main Street Note and Mortgage. Instead the Plan provided that the Class 4 Claim would be allowed as a secured claim "in the amount scheduled in the Debtor's schedule D filed with the Court, or a proof of claim filed by Bayview, subject to Debtor's review or as allowed by the Court ...." As with the Greenwood Street Note, the Plan proposed to pay the Main Street Note over a seven year period based on a 20-year amortization schedule. The Plan also proposed to changed the Notes' adjustable interest rates to a fixed rate of 7%. The Plan acknowledges that both Class 4 and Class 5 claims, among others, were impaired.

The Court set November 7, 2008 as the deadline for filing objections to the Plan. Copies of the Disclosure Statement and Plan as well as the Court's order establishing the confirmation objection deadline were served on Bayview's counsel. Shortly after the Court set the Plan

4

objection deadline, Bayview filed Claim 7. Two days before the confirmation hearing, the Debtor filed the Objections presently before the Court. Although Bayview did not file a timely confirmation objection, it filed a late objection to confirmation [#48] less than one hour before the confirmation hearing. The Court did not rule on the merits of the untimely objection but the Debtor and Bayview agreed to amend the treatment of Bayview's claims under the Plan as follows:

> Articles 3.14 and 3.15 of the Debtor's Plan of reorganization are amended as follows: Within 10 days after an order on the Debtor's objection to Bayview's claim becomes final and non-appealable, the Debtor may, at his sole election, surrender the collateral to Bayview by filing and serving upon Bayview an Election to Surrender. If the Debtor does not file an Election to Surrender, any fees and penalties allowed as part of Bayview's secured claim shall be paid in 84 monthly installments commencing on the 60th day following the Effective Date.

An order confirming the Plan entered on December 4, 2008 [# 51]. No appeal was taken from the confirmation order.

**POSITION OF THE PARTIES**

Bayview argues that it is entitled to prepayment fees under both Notes and Mortgages because the Debtor defaulted on his obligations and, upon, default, the Notes were both accelerated. According to Bayview the acceleration of the Notes upon default is an act of prepayment. It further argues that it is not bound by the terms of the Plan because it did not accept the Plan and the Plan did not satisfy all the conditions for it to be confirmed pursuant to 11 U.S.C § 1129(b). Specifically Bayview argues that because the Plan does not provide for payment of the prepayment fees, it is not fair and equitable and does not give Bayview the indubitable equivalent of what it would receive in a liquidation.

5

The Debtor does not dispute that the documents provide for prepayment fees but raises several arguments why the prepayment provisions are not applicable. The Debtor argues that Bayview may not collaterally attack the confirmation order because the Plan, which was served on Bayview's counsel, clearly anticipated the disallowance of prepayment fees. The Debtor also argues that the fees are only due when the Note or Notes are actually paid. Since the Notes are not being paid in full within the Prepayment Periods, there is no entitlement to any prepayment fee. He also challenges whether Bayview accelerated the Notes, which is the cornerstone of Bayview's argument, but posits that even if the Notes were accelerated and the mere fact of having payment in full due without regard to whether the Notes were actually paid triggers the preoayment fees, 11 U.S.C. § 1124(2) provides "de-acceleration" of the Notes. The Debtor cites *In re Onco Investment Company*, 316 B.R. 163 (Bankr. D. Del. 2004), for support. Finally, the Debtor argues that the prepayment fees, which he describes as "penalties," are unreasonable and at best can only be allowed as general unsecured claims pursuant to the First Circuit's decision in *UPS Capital Business Credit v. Gencarelli (In re Gencarelli)*, 501 F.3d 1 (1st Cir. 2007).

**DISCUSSION**

The Objections must be sustained for several reasons. First, as this Court stated in *In re Chang*, 274 B.R. 295, 301 (Bankr. D. Mass.2002), "[o]rdinarily principles of *res judicata* prevent a subsequent attack on the confirmation of a plan." When a creditor has received notice of a proposed plan that gives it "plain notice that its interests are in jeopardy," the creditor cannot simply rely upon the claims objection process to protect its interest. *Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 373 (1st Cir. BAP 2001). If the creditor does so, its claim is barred by the confirmation order. *Id.*

6

There is no dispute that Bayview received proper notice of the Plan and the deadline to object to the Plan but failed to file a timely objection. Nor did it appeal the confirmation order.[4] Nor does Bayview challenge that the Plan was sufficient to put it on notice that its interests were in jeopardy and thus has waived this argument. Indeed the Plan's treatment of Bayview's Class 5 Claim, arising from the Greenwood Street Note and Mortgage, was clear: the "Default Prepayment Consideration" was to be disallowed. Although Bayview had not filed Claim 7, that is the claim arising from the Main Street Note and Mortgage, at the time the Plan was filed, it would not be reasonable for Bayview to expect that this Claim, classified as the Class 4 Claim, would receive any better treatment. Therefore the order is final and binding upon Bayview despite its own "lack of acceptance" of the Plan. It is too late for Bayview to attack the confirmation order.

Moreover, at the hearing on the Objections, this Court instructed Bayview to produce the documentation it claimed evidenced its acceleration of the Notes. In his supplemental memorandum, the Debtor reported that his counsel sent Bayview's counsel an email after the hearing specifically requesting copies of any such documentation. No documentation was produced. Therefore Bayview has not sustained its burden of establishing that the Notes were accelerated and because acceleration is the foundation for the prepayment fees according to Bayview, those fees must be disallowed.[5]

---

[4]Not only did Bayview not object to the entry of the confirmation order, but also it reached agreement with the Debtor as to additional language for the Debtor's potential election to surrender the collateral, which was inserted into the confirmation order.

[5]The Debtor's counsel acknowledged at the hearing that he had seen a notice of default. The Court has not been provided with copies of the notice and is unaware when such notice or notices were sent and their contents. To the extent that Bayview's counsel argued that the notice

7

The Debtor also argues that the prepayment fee or penalty, as the Debtor refers to it, is only due when there is an actual prepayment of the Notes. Only the Main Street Note defines "prepayment" and although the definition suggests that "Prepayment" refers to the actual prepayment of principal, such a narrow definition ignores the language "Acceleration and default" language found elsewhere in the Notes. That language contemplates that Bayview may declare a default and accelerate the Notes so that all amounts due, including the "Prepayment Consideration," would be due. Yet, although the Court rejects the Debtor's narrow interpretation that actual payment is needed to trigger a prepayment fee, Bayview has not produced *evidence*, as compared to arguments of counsel, that it declared the default and accelerated the Notes.

Before concluding, the Court will briefly address the Debtors position that even if Bayview accelerated the Notes, the confirmed plan de-acclerated the Notes under § 1124(2). Section 1124(2), however, permits a debtor to avoid a acceleration if, among other things, the plan "does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(2)(E). In this case the Debtor's plan did alter Bayview's contractual rights and, as the Debtor concedes in the Plan itself, Bayview's claims are impaired. Thus § 1124(2)(E) is not applicable and the *Onco* decision is distinquishable.[6]

---

provided for automatic acceleration without further notice if payments were not made, such argument is not evidence. *In re Pabon Rodriguez*, 233 B.R. 212, 226 (Bankr. D.P.R. 1999).

[6]*Onco* involved a dispute among two classes of creditors who were parties to an intercreditor agreement. The senior class acknowledged that the plan cured the default and returned it to its pre-default state and that § 1124(2)(E) rendered it unimpaired. Nevertheless the senior class attempted to collect the default fees from the junior class. The court held that § 1124(2)(E) "rolled back" the clock to prior to the default so that it was as if the default never occurred and therefore the senior class was not entitled to any default fees.

8

Because the Default Prepayment Consideration is not allowable, there is no need for the court to address the reasonableness of the fees or the impact of *Gencarelli*.

**CONCLUSIONS**

For the foregoing reasons, the Objections will be SUSTAINED. A separate order will issue.

Dated: February 5, 2009

/s/ Joel B. Rosenthal
Joel B. Rosenthal
United States Bankruptcy Judge